991 F.2d 790
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James NELSON, Jr., Plaintiff-Appellant,
v.
BALTIMORE CITY POLICE DEPARTMENT; Edward V. Woods,
Commissioner, Defendants-Appellees.
 No. 91-2275.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 2, 1993.
Decided April 16, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore (CA-91-2097-S), Frederic N. Smalkin, District Judge.
 Michael Lawrence Marshall, Schlachman, Belsky & Weiner, P.A., Baltimore, Md, for plaintiff-appellant.
 Michael Allan Fry, Asst. Sol., argued (Neal M. Janey, City Sol., Otho M. Thompson, Associate Sol., Baltimore Police Dept., Baltimore, Md, on brief), for defendants-appellees.
 D.Md.
 AFFIRMED.
 Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 The plaintiff in this action, Officer James Nelson, Jr., appeals from the district court's order granting summary judgment for the defendants, the Baltimore City Police Department and Edward V. Woods, the Police Commissioner, (hereinafter collectively referred to as "the Department") on Nelson's claims under 42 U.S.C. § 1983. This appeal requires us to examine whether Nelson was afforded constitutionally sufficient due process prior to his suspension from the police force. Because we conclude that the process afforded Nelson satisfied the Constitution, we affirm.
 
 I.
 
 2
 The facts in this case are not in dispute. Nelson was suspended from duty as a Baltimore police officer with pay on February 15, 1991, pursuant to the Maryland Law Enforcement Officers' Bill of Rights, Md.Ann.Code art. 27, §§ 727-734D (1992), as a consequence of his arrest that day for alleged child abuse, child sexual abuse, and common law assault.[1]
 
 
 3
 On February 19, 1991, the Department convened a hearing to determine whether the circumstances surrounding the suspension warranted a continued suspension, and if so, whether it should be without pay. At the hearing, Captain Martin Beauchamp, the Deputy District Commander of the Western District of Baltimore, testified as to the circumstances surrounding Nelson's arrest. In response, Nelson's counsel raised the issues of lack of investigation by an independent law enforcement agency and the credibility of the victim. Nelson refused to testify on advice of counsel. The hearing officer thereafter concluded that the charges levied against Nelson were of a sufficiently serious nature to warrant continued suspension from duty, but without pay. On February 20, 1991, the Department suspended Nelson without pay pursuant to Md.Ann.Code art. 27, § 734A(3) (1992).[2]
 
 
 4
 On March 19, 1991, the State Attorney's Office for Baltimore City declined to prosecute Nelson for the offenses charged. Nelson was restored to active duty and pay status on April 4, 1991, effective March 19, 1991.
 
 
 5
 Nelson filed this case on July 25, 1991, alleging that the hearing leading to his suspension without pay was inadequate, denying him due process of law under the fourteenth amendment. Nelson also challenged the constitutionality of Section 734A, on its face and as applied. His complaint requested an award of back pay and benefits, a declaration that Section 734A is unconstitutional, and attorneys' fees. The district court granted the defendant's motion for summary judgment on October 3, 1991. Nelson thereafter filed a motion for relief from judgment or order, which was also denied. Nelson now appeals.[3]
 
 II.
 
 6
 At the outset, we note that our decision in Garraghty v. Jordan, 830 F.2d 1295 (4th Cir.1987), guides our analysis of the adequacy of the pre-deprivation procedures afforded Nelson. In that case, Garraghty, the Warden of the Nottoway Correctional Center, was suspended without pay for five days for insubordination during a meeting with the Regional Administrator of Prisons. Garraghty claimed that the defendants had violated his right to due process because he was not given notice of the charges against him and was not given a meaningful opportunity to contest those charges before a neutral decision maker. In reaching our conclusion that Garraghty received "all the process he was entitled to," we followed a two-part analysis applicable to pre-deprivation procedural due process claims: First, we must determine "whether the discipline imposed deprived [Nelson] of a property interest protected by the fourteenth amendment," and if so, we must also determine "whether the manner in which the discipline was imposed satisfied constitutionally mandated protections." Id. at 1299 (citing Board of Regents v. Roth, 408 U.S. 564 (1972)). Because we agree with the parties that Nelson has a property interest protected by the fourteenth amendment, and in light of our conclusion in Garraghty that a five-day suspension without pay was not too insubstantial to entitle Garraghty to the protection of the Constitution, we must determine the process that Nelson was entitled to.
 
 
 7
 Due process requires, at a minimum, that a public employee with a protected property interest in employment be furnished with notice of the charges raised against him and a meaningful opportunity to respond to those charges prior to a deprivation of that interest. Id. (citing Cleveland Board of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); Arnett v. Kennedy, 416 U.S. 134, 170-71 (1974)). The Supreme Court's decisions in Goss v. Lopez, 419 U.S. 565 (1975), and Cleveland Board of Educ. v. Loudermill, 470 U.S. 532 (1985), illustrate the scope of due process in the property entitlement context.
 
 
 8
 In Goss, a local school principal suspended a group of high school students for misconduct occurring during a period of widespread student unrest. Each had been suspended for 10 days; none was given a hearing. The school did offer each student, along with his or her parents, the opportunity to attend a post-suspension conference to discuss the suspension. After concluding that the students has a protectable property interest in public education under the fourteenth amendment, 419 U.S. at 573, the Court held that due process required that the students receive notice of the charges and an opportunity to present their side of the story if they chose to deny the charges, id. at 581. The Court refused, however, to require that each student be afforded a full adversarial-type hearing in light of the overwhelming burden such a requirement would place on local resources and the inefficiency that such a requirement would cause. Id. at 583. The notice and hearing requirements, however, served to protect the students from an erroneous deprivation of their protected property interest. Id. at 583-84.
 
 
 9
 In Loudermill, the Cleveland Board of Education had fired Loudermill, a security guard, for failing to disclose a felony conviction on his job application. The Court concluded that because Loudermill had alleged in his complaint that he did not have an opportunity to respond to the charges before the Board terminated him, the district court erred in dismissing his complaint for failure to state a claim. In reaching that conclusion, the Court stressed that "[t]he essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." 470 U.S. at 546. Additionally, the Court's holding rested in part on the fact that Ohio law provided for a complete post-termination hearing. Id.
 
 
 10
 In the procedural due process context, this Court has used the factors set forth by the Supreme Court in Loudermill as guideposts for determining whether constitutional due process principles were satisfied. Garraghty, 830 F.2d at 1301. Those factors require us to "balance[ ] the competition between (a) the employee's interest in his employment, (b) the government's interest in an expeditious and effective tool to discipline unsatisfactory employees, (c) the government's interest in the avoidance of undue administrative or fiscal burdens, and (d) the risk of an erroneous deprivation of the employee's interest." Id. (citing Loudermill, 470 U.S. at 542-43). In addition, we note that this case involves a suspension and not a termination. Thus, as in Garraghty, Nelson's deprivation lies between Loudermill's termination and the suspension in Goss. Id. at 1300. Therefore, in any event, Nelson is entitled to "proceedings no more formal and extensive than those required in Loudermill, and no less extensive than the proceedings delineated in Goss." Id. Keeping these factors in mind, we now turn to the district court's conclusion that the Department was entitled to judgment as a matter of law, which we review de novo. Brock v. Entre Computer Centers, Inc., 933 F.2d 1253, 1259 (4th Cir.1991); Farwell v. Un, 902 F.2d 282, 287 (4th Cir.1990).
 
 
 11
 In the case at hand, Nelson does not argue that he had insufficient notice of the hearing or the charges against him, but instead contends that he should have been able to contest the underlying charges against him at the suspension hearing. In the context of termination proceedings, however, the Supreme Court has indicated that the hearing should be "a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Loudermill, 470 U.S. at 545-46. "A pre-deprivation proceeding need not be a full evidentiary hearing with witnesses and a neutral decision maker so long as the employee is given an opportunity to answer the charges." Garraghty, 830 F.2d at 1302 (citing Loudermill, 470 U.S. at 545-46).
 
 
 12
 At Nelson's hearing, Captain Beauchamp testified that an investigation by the Department's Youth Section revealed that Nelson had committed serious criminal violations of Maryland law, that a warrant based upon probable cause was issued, and that Nelson was arrested and charged as a result. These facts support a conclusion that reasonable grounds existed that the charges against Nelson were sufficiently reliable to support the suspension without pay.[4] Because Section 734A allows the Department to suspend officers without pay for being charged with a felony, we conclude that the hearing adequately provided Nelson with the opportunity to challenge that finding. Indeed, Nelson does not challenge that finding. Rather, he argues, due process entitles him to challenge the felony charge itself. The statute, however, does not provide the officer with that opportunity, and with good reason: it is the province of the trial court to determine the accused's guilt or innocence.
 
 
 13
 Our conclusion that Nelson was afforded due process before his suspension without pay is supported by our recognition in Garraghty of the realities of the law enforcement system:
 
 
 14
 The deprivation caused by a short-term suspension, when balanced with the government's interest in expeditious and effective discipline and the administrative burden of providing a neutral decision-maker for every routine suspension, does not warrant pre-deprivation proceedings before a neutral party. Realities of the work place, especially in the paramilitary environment of corrections departments, require that authority be respected and that discipline be swift.
 
 
 15
 Garraghty, 830 F.2d at 1302. As this passage indicates, the realities of law enforcement often require expedient measures to maintain order. The power to suspend officers charged with felonies serves the valuable purpose of preserving public confidence in the justice system. The Maryland statutory scheme grants the Department the discretion to suspend an officer charged with a felony with or without pay, depending upon the seriousness of the offense. Certainly the charge of felony child abuse is a serious one that would shake public confidence in the police department were Officer Nelson retained on full pay while awaiting trial. Nelson was charged and arrested based on a warrant supported by probable cause and was suspended without pay after a hearing to determine whether he had, in fact, been charged with a felony. The State of Maryland has concluded that a suspension without pay is one appropriate sanction against an officer who has been charged with a felony; the Maryland statute, however, does not require that the suspension be without pay, and that decision remains within the discretion of the Department. Because the Due Process Clause only protects constitutionally recognizable property interests from being "taken away for misconduct without adherence to the minimum procedures required by that Clause," Goss, 419 U.S. at 574, we conclude that the procedures followed during Nelson's suspension comport with the requirement of due process.
 
 III.
 
 16
 Because we conclude that Nelson received all the process he was due, we affirm the district court's order granting summary judgment to the defendants.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Child abuse is a felony in Maryland punishable by a maximum of 15 years in prison, and child sexual abuse is a felony punishable by a maximum of 10 years in prison. Md.Ann.Code art. 27, §§ 35A, 464B (1992)
 
 
 [2]
 Section 734A(3) provides:
 (3)(i) Emergency suspension of police powers without pay may be imposed by the chief if a law enforcement officer has been charged with the commission of a felony.
 (ii) Any person so suspended shall be entitled to a prompt hearing.
 Md.Ann.Code art. 27, § 734A(3) (1992).
 
 
 [3]
 Because Nelson bases his appeal on his contention that the district court erred in concluding that he was afforded adequate due process, we need not address the other allegations in his complaint
 
 
 [4]
 Nelson suggests, despite the clear language in Loudermill to the contrary, that a full evidentiary hearing is required to afford him the process he is due. We cannot accept that argument; the Supreme Court rejected that requirement in Loudermill and we rejected it in Garraghty. Loudermill, 470 U.S. at 545-46; Garraghty, 830 F.2d at 1302 ("A pre-deprivation proceeding need not be a full evidentiary hearing with witnesses and a neutral decision maker so long as the employee is given an opportunity to answer the charges.")